IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:12-CV-69-D

BRETT DONALD SULLIVAN, )
)
Plaintiff, )
)
v. ) **ORDER**
)
HUGH A. CANNADY, et al., )
)
Defendants. )

On March 22, 2012, Brett Donald Sullivan ("plaintiff" or "Sullivan"), proceeding pro se, filed a complaint under 42 U.S.C. § 1983 and North Carolina law against fourteen defendants, including the State of North Carolina by and through Governor Beverly Perdue; North Carolina Supreme Court Chief Justice Sarah Parker; North Carolina Court of Appeals Judges Wanda Bryant, Cheri Beasley, and Linda McGee; John W. Smith, Director of the Administrative Office of the Courts ("AOC"); Hon. W. Allen Cobb, Pender County Superior Court Judge; Hon. J.H. Corpening, Pender County Chief District Court Judge; Hon. R. Russell Davis, Pender County District Court Judge; Joseph Bowman, Pender County Assistant District Attorney; Pender County Magistrate LaVonne Casey; Robert Kilroy, Pender County Clerk of Court; North Carolina Highway Patrol Commander Michael Gilchrist; and North Carolina State Trooper Hugh A. Cannady (collectively "defendants").[1] Compl. [D.E. 1]. On April 5, 2012, the judicial defendants (all defendants except

---

[1] Sullivan also named as defendants ten John Does, who "were . . . employed in positions of authority in the STATE's judiciary and Administrative Office of the Courts with supervisory/ advisory responsibility over those who establish/administer oaths to juries in the STATE." Compl. ¶ 19. John Doe suits are not favored in federal courts. See, e.g., Chidi Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 2000 WL 903896, at *1 (4th Cir. 2000) (per curiam) (unpublished table decision); Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982) (suits against unnamed defendants

Gilchrist and Cannady) filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6) [D.E. 3]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Sullivan about the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 5]. On April 24, 2012, Sullivan responded in opposition [D.E. 8]. On April 26, 2012, the judicial defendants filed a reply [D.E. 9].

On May 7, 2012, defendants Cannady and Gilchrist ("the Highway Patrol defendants") filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) [D.E. 10]. On May 31, 2012, Sullivan responded in opposition [D.E. 13]. As explained below, the court grants defendants' motions to dismiss.

I.

On March 24, 2009, Sullivan "approached, and stopped at, a license checkpoint being conducted by the NC State Highway Patrol" in Pender County, North Carolina. Compl. ¶ 26. Defendant Cannady, a state trooper, asked Sullivan for his license and registration, which were issued in Michigan. Id.[2] Sullivan "was towing a homebuilt utility trailer at the time." Id. When Cannady asked further questions of Sullivan, Sullivan "respectfully declined to answer any of his questions, openly acknowledging my exercise of the Fifth Amendment right against self-incrimination." Id. Cannady then arrested Sullivan, notified Sullivan of his Miranda rights, and took

---

are permissible only against "real, but unidentified, defendants"). Moreover, the doctrine of respondeat superior generally does not apply to a section 1983 action. See, e.g., Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Carter v. Morris, 164 F.3d 215, 218, 220–21 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798–99 (4th Cir. 1994). Sullivan has failed to state a claim under section 1983 for damages against any John Doe defendant, and those defendants are dismissed.

[2] Sullivan alleges that at the time of the traffic stop, he was a legal resident of the State of Michigan, but came to Pender County often to visit his parents, and is now a North Carolina resident. Compl. ¶¶ 4, 29.

2

Sullivan to the Pender County courthouse for a probable cause hearing. Id. ¶ 30.

Defendant Casey, a magistrate in Pender County, conducted the probable cause hearing and Sullivan was charged with not having a North Carolina driver's license or registration on his truck or trailer, "no proof of financial responsibility," and failing to provide an address. Id. ¶ 31. Casey set a trial date and ordered a secured bond of $50,000, which she later reduced to an unsecured bond of $2,000 after Sullivan's father "returned with the bail money and had a conversation with Defendant Casey in her office." Id. ¶ 33. Sullivan was released after being held for two hours. Id.

On May 20, 2009, in Pender County District Court, Sullivan was arraigned. Id. ¶ 34. Before Sullivan's arraignment, defendant Bowman, a Pender County assistant district attorney, "offered [Sullivan] a 'plea bargain' to dismiss [several charges], and only charge [Sullivan] with two counts of no registration." Id. Sullivan declined the offer, and the presiding district court judge set a trial date of July 15, 2009. Id. On July 15, 2009, following a bench trial at which Pender County District Court Judge Davis presided, Sullivan was convicted of all five charges, and "sentenced to 45 days, suspended, 24 months unsupervised probation, $1,000.00 fine and costs of court." Id. ¶ 35.

Sullivan appealed his conviction to Pender County Superior Court. Before trial, the court dismissed the charge of "no financial responsibility." Id. ¶ 37. On November 30, 2009, Superior Court Judge Cobb presided over Sullivan's jury trial. See, e.g., id. ¶¶ 37, 40; State v. Sullivan, 710 S.E.2d 709, 2011 WL 720973, at *1 (N.C. Ct. App. Mar. 1, 2011) (unpublished table opinion). Defendant Cobb denied Sullivan's request to have his father (who is not an attorney) assist him at the trial. Compl. ¶ 37. Sullivan asserts that the State's case against him was not supported by "any evidence or testimony" and that Bowman improperly relied on Sullivan's refusal to answer defendant Cannady's questions during the traffic stop. Id. ¶ 39. Sullivan asserts further that defendant Cobb gave improper instructions to the jury, and that the assistant clerk of court (supervised by defendant

3

Kilroy, the Pender County Clerk of Court) "administered [an] incomplete oath to the jurors as it was provided her through Defendant Kilroy . . . under the direct supervision of Defendant Smith," the Director of the Administrative Office of the Courts. Id. ¶¶ 38, 40. The jury convicted Sullivan of two counts of driving an unregistered vehicle and refusing to produce an address on demand, but acquitted him of the charge of not having a North Carolina driver's license. Id. ¶ 40; see Sullivan, 2011 WL 720973, at *1. Defendant Cobb sentenced Sullivan to forty-five days' imprisonment (suspended), twenty-four months' supervised probation (including six months' intensive supervision), an active sentence of five days, jail fees, and ordered Sullivan to obtain a North Carolina driver's license. Compl. ¶ 41; Sullivan, 2011 WL 720973, at *1. Sullivan "appealed and was jailed [for two hours] pending payment of a $20,000.00 appeal bond." Compl. ¶ 41. The North Carolina Court of Appeals, through defendants Bryant, Beasley, and McGee, reviewed Sullivan's conviction and found no error. Compl. ¶¶ 42–45; Sullivan, 2011 WL 720973, at *7. Sullivan then appealed to the Supreme Court of North Carolina, which dismissed the appeal. Compl. ¶ 49; State v. Sullivan, 710 S.E.2d 46, 46 (N.C. 2011). Defendant Parker is Chief Justice of the Supreme Court of North Carolina. Compl. ¶ 18.

Sullivan asserts various defects in the criminal pretrial and trial proceedings against him, including being arrested without probable cause, lack of jurisdiction to prosecute him, prosecutorial misconduct, and an improperly sworn jury. Compl. ¶¶ 51–78. Sullivan asserts violations of 42 U.S.C. § 1983 in that defendants "deprived [Sullivan] of rights, privileges, and immunities secured . . . by the . . . Fourth, Fifth, Sixth and Fourteenth Amendments" to the United States Constitution and unspecified federal laws. Id. ¶ 51. Sullivan also appears to assert state-law claims of false arrest, false imprisonment, malicious prosecution, prosecutorial misconduct, and violations of the North Carolina Constitution. Id. ¶¶ 51–78. Sullivan sues all defendants in their individual and

4

official capacities, and seeks compensatory and punitive damages, litigation costs, and various forms of injunctive relief. Id. ¶¶ 5–18, 51–78.

II.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012). A federal court "must determine that it has subject-matter jurisdiction over [a claim] before it can pass on the merits of that [claim]." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). Sullivan, as the party asserting that this court has subject-matter jurisdiction, must prove that subject-matter jurisdiction exists. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. Evans, 166 F.3d at 647.

A motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. See, e.g., Iqbal, 556 U.S. at 678. A court also "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at

5

302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The court first addresses the judicial defendants' argument that they are immune from suit. Mem. Supp. Jud. Defs.' Mot. Dismiss [D.E. 4] 11–14. As for defendants Parker, Bryant, Beasley, McGee, Cobb, Corpening, and Davis, "[f]ew doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." Pierson v. Ray, 386 U.S. 547, 553–54 (1967), abrogated on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982); see Rehberg v. Paulk, 132 S. Ct. 1497, 1503 (2012). Likewise, quasi-judicial immunity protects court clerks like defendant Kilroy. See Briscoe v. LaHue, 460 U.S. 325, 335 (1983); Lundahl v. Zimmer, 296 F.3d 936, 939 (10th Cir. 2002); Wiley v. Buncombe Cnty., 846 F. Supp. 2d 480, 485 (W.D.N.C. 2012) ("The doctrine of absolute quasi-judicial immunity has been adopted and made applicable to court support personnel because of the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." (quotation omitted)). As for defendant Bowman, prosecutors are absolutely immune when carrying out the judicial phase of prosecutorial functions, including initiating a judicial proceeding or appearing in court. See, e.g., Van de Kamp v. Goldstein, 555 U.S. 335, 342 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 269–70 (1993); Imbler v. Pachtman, 424 U.S. 409, 431 (1976). Finally, as for defendant Casey, magistrates are "judicial officers [who] are entitled to absolute immunity for acts performed in their judicial capacity." Pressly v. Gregory, 831 F.2d 514, 517 (4th Cir. 1987). "That immunity is vitiated only when the judicial officer acts in the clear absence of all jurisdiction." Id. Sullivan has alleged that

6

Casey held a probable cause hearing after his arrest and set his bail, "actions which fall naturally within a magistrate's judicial capacity." Hedgepeth v. Wilkes C., No. 3:12-cv-262-RJC, 2012 WL 2092853, at *4 (W.D.N.C. June 11, 2012) (unpublished).

In opposition to concluding that Parker, Bryant, Beasley, McGee, Cobb, Corpening, Davis, Bowman, and Kilroy are immune from damages, Sullivan asserts "that the court lacked jurisdiction to try [him] because it failed to properly set the courtroom when it failed to give the jurors the mandated statutory oath, thereby merely simulating the judicial process." Resp. Opp'n Jud. Defs.' Mot. Dismiss 7. Sullivan's argument fails. See, e.g., Stump v. Sparkman, 435 U.S. 349, 356–60 (1978). Nor does Sullivan's request for injunctive relief save his suit. See, e.g., Lawrence v. Kuenhold, 271 F. App'x 763, 766 n.6 (10th Cir. 2008) (unpublished); Roth v. King, 449 F.3d 1272, 1286–87 (D.C. Cir. 2006); Gilmore v. Bostic, 636 F. Supp. 2d 496, 506 (S.D. W. Va. 2009) (collecting cases). Thus, the court dismisses Sullivan's claims against defendants Parker, Bryant, Beasley, McGee, Cobb, Davis, Kilroy, and Bowman.[3]

Next, the court addresses Sullivan's official-capacity claims against the State of North Carolina by and through Beverly Perdue, AOC Director Smith, and the Highway Patrol defendants, Commander Gilchrist and Trooper Cannady.[4] These defendants assert that the Eleventh

---

[3] Sullivan claims that defendants Parker and Corpening failed to train members of the North Carolina judiciary. Compl. ¶¶ 59, 65, 76. But these claims do not survive under Rule 12(b)(6) and the claims are dismissed. See Iqbal, 556 U.S. at 676; Carter, 164 F.3d at 220–21; Shaw, 13 F.3d at 798–99.

[4] Sullivan filed individual-capacity claims against the State, Director Smith, and Commander Gilchrist based on theories of supervisory liability, failure to train and/or responsibility "for the policies, practices and procedures." Compl. ¶¶ 6, 15–17. Sullivan has failed to state a claim and the claims are dismissed. Iqbal, 556 U.S. at 676; Carter, 164 F.3d at 218, 220–21; Shaw, 13 F.3d at 798–99; Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977); Cooper v. Brunswick Cnty. Sheriff's Dep't, No. 7:10-CV-14-D, 2012 WL 4484717, at *17–18 (E.D.N.C. Sept. 27, 2012) (unpublished).

Amendment bars Sullivan's claims for monetary damages against them.[5] Mem. Supp. Jud. Defs.' Mot. Dismiss 5–6; Mem. Supp. Highway Patrol Defs.' Mot. Dismiss [D.E. 11] 6. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The Eleventh Amendment provides immunity from "suit in federal court by private parties seeking to impose a liability which must be paid from public funds in the state treasury." Quern v. Jordan, 440 U.S. 332, 337 (1979); see Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989). The Eleventh Amendment also "protects state agents and state instrumentalities" and confers an entitlement of "an immunity from suit rather than a mere defense to liability." Constantine, 411 F.3d at 479, 482 (quotations and emphasis omitted). Absent waiver by the State or a valid congressional override, the Eleventh Amendment bars an action for damages in federal court against state agencies and other government entities that are characterized as "arm[s] of the State." Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 430 (1997) (quotation omitted). The bar extends to heads of agencies sued in their official capacities. Will, 491 U.S. at 70–71; see Kentucky v. Graham, 473 U.S. 159, 165–66 (1985). Thus, in their official capacities, these defendants are immune from suit for monetary damages. See, e.g., Smith v. McCarthy, 349 F. App'x 851, 859 n.13 (4th Cir. 2009) (per curiam) (unpublished); Ballenger v. Owens, 352 F.3d 842, 844–45 (4th Cir. 2003); Lynn v. West, 134 F.3d 582, 587 (4th Cir. 1998).

---

[5] Although "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law," Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); Lee-Thomas v. Prince George's Cnty. Pub. Sch., 666 F.3d 244, 249 (4th Cir. 2012), Sullivan's request for injunctive relief is moot. See, e.g., Alvarez v. Smith, 130 S. Ct. 576, 580–81 (2009) (collecting cases); Lebron v. Rumsfeld, 670 F.3d 540, 561 (4th Cir. 2012). Alternatively, it lacks merit. Thus, the court dismisses Sullivan's request for injunctive relief.

Sullivan asserts that the text of the Eleventh Amendment does not "disallow a citizen to sue his own state in a United States court." Resp. Opp'n Jud. Defs.' Mot. Dismiss 3. However, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 663 (1974); see Lee-Thomas, 666 F.3d at 248. Additionally, Sullivan's argument that "the 'Clearfield Trust Doctrine'" abrogates Eleventh Amendment immunity is ridiculous.

As for Sullivan's claims against Trooper Cannady in his individual capacity, Cannady asserts that he is entitled to qualified immunity. Mem. Supp. Highway Patrol Defs.' Mot. Dismiss 6–8. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818; see Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012); Pearson v. Callahan, 555 U.S. 223, 231–32 (2009). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986); see Reichle, 132 S. Ct. at 2093; Messerschmidt v. Millender, 132 S. Ct. 1235, 1244 (2012); Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011); Pearson, 555 U.S. at 231–32.

The court must ask two questions to determine whether qualified immunity applies. See, e.g., Reichle, 132 S. Ct. at 2093; Pearson, 555 U.S. at 232; Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Unus v. Kane, 565 F.3d 103, 123 n.24 (4th Cir. 2009); Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007); Bostic v. Rodriguez, 667 F. Supp. 2d 591, 605–06 (E.D.N.C. 2009). The court decides which question to address first. Pearson, 555 U.S. at 236; see Reichle, 132 S. Ct. at 2093; al-Kidd, 131 S. Ct. at 2080. The court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional

9

right." Pearson, 555 U.S. at 232. The court must also determine "whether the right at issue was clearly established at the time of defendant's alleged misconduct." Id. (quotation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." al-Kidd, 131 S. Ct. at 2083 (quotations omitted) (alterations in original); see Reichle, 132 S. Ct. at 2093; Anderson v. Creighton, 483 U.S. 635, 640 (1987). The United States Supreme Court does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 131 S. Ct. at 2083; see Reichle, 132 S. Ct. at 2093. Defendants are entitled to summary judgment on qualified immunity grounds if the answer to either question is "no." See, e.g., al-Kidd, 131 S. Ct. at 2080; Miller, 475 F.3d at 627; Bostic, 667 F. Supp. 2d at 606.

The allegations of Sullivan's complaint, viewed in the light most favorable to him, fail to state a constitutional violation. See, e.g., Hiibel v. Sixth Jud. Dist. Ct., 542 U.S. 177, 190–91 (2004); Koch v. City of Del City, 660 F.3d 1228, 1245–46 (10th Cir. 2011); Burrell v. Virginia, 395 F.3d 508, 510–11, 513–14 (4th Cir. 2005). Thus, the court dismisses Sullivan's individual-capacity claim against Trooper Cannady.

Finally, in light of the dismissal of Sullivan's federal claims, the court declines to exercise supplemental jurisdiction over any state-law claims he asserted, and dismisses those claims without prejudice. 28 U.S.C. § 1367(c)(3); see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995); Sullivan v. North Carolina, No. 7:11-CV-238-D, 2012 WL 3762445, at *5 (E.D.N.C. Aug. 29, 2012) (unpublished).

III.

In sum, the court GRANTS defendants' motions to dismiss [D.E. 3, 10] and DISMISSES plaintiff's section 1983 claims. The court DISMISSES plaintiff's state-law claims WITHOUT PREJUDICE. The Clerk of Court shall close the case.

SO ORDERED. This 9 day of October 2012.

JAMES C. DEVER III
Chief United States District Judge